**AMINI LLC**
131 West 35th Street, 12th Floor
New York, New York 10001
(212) 490-4700
Bijan Amini
Avery Samet
bamini@aminillc.com
asamet@aminillc.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

JOHN MCMURRY, ROBERT FAY, and JILL ROBINSON,

    Plaintiffs,

v.

PEARSON EDUCATION, INC.

    Defendant.

-------------------------------------------------------------x

Docket No. _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs John McMurry, Robert Fay, and Jill Robinson ("Plaintiffs"), by their undersigned counsel, as and for their Complaint against Defendant Pearson Education, Inc. ("Pearson"), allege, based on personal knowledge as to their own acts and statements and on information and belief as to all other matters, as follows:

**THE PARTIES**

1. Plaintiff John McMurry is an individual and citizen of the State of New York, residing at 625 Highland Road, Ithaca, New York 14850. Professor McMurry is a co-author of *General Chemistry*; *Principles of General, Organic, and Biological Chemistry*; and *Chemistry: An Atoms First Approach*.

2. Plaintiff Robert Fay is an individual and citizen of the State of Virginia, residing at 7414 Spring Village Drive, Apt. 409, Springfield, Virginia 22150. Professor Fay is a co-author of *General Chemistry* and *Chemistry: An Atoms First Approach*.

3. Plaintiff Jill Robinson is an individual and citizen of the State of Indiana, residing at 2005 Renwick Boulevard, Bloomington, Indiana 47401. Professor Robinson is a contributing author of *General Chemistry*.

4. Upon information and belief, Defendant Pearson is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 221 River Street, Hoboken, New Jersey 07030.

5. Upon information and belief, at some point prior to February 6, 2002, Pearson became successor-in-interest to Prentice-Hall, Inc. ("Prentice Hall").

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

7. Venue is proper because agreements between Pearson and Plaintiffs at issue herein provide for venue in the federal and state courts of the State of New York located in the County of New York.

## FACTUAL BACKGROUND

**I.   The Agreements**

8. Pearson is self-described as "the world's learning company," with 35,000 employees across 70 countries worldwide. Pearson advertises that its tools, content, products and services are used by millions of teachers and learners around the world every day. Pearson

provides those tools, content, products and services for use in the area of higher education, among others.

    A.    *General Chemistry*

9. On September 17, 1986, Professors McMurry and Fay entered into a publishing agreement with Pearson (through its predecessor-in-interest Prentice-Hall) for the work *General Chemistry* (the "*General Chemistry* Publishing Agreement"), also sold under the name *Chemistry*. That agreement set forth the schedule of royalties to be paid by Pearson to Professors McMurry and Fay, calculated based upon the quantity and type of sales of that work.

10. On October 28, 2009, Pearson and Professors McMurry and Fay entered into an amendment to the *General Chemistry* Publishing Agreement (the "October 28, 2009 Amendment"), which deleted and replaced the schedule of royalties in that *General Chemistry* Publishing Agreement.

11. With respect to "Custom Editions," the October 28, 2009 Amendment provides that Professors McMurry and Fay will receive:

> 10% of the net cash received by [Pearson] or [its] affiliate for the sale of copies of custom editions of the Work created primarily for a particular institution. For purposes of this subparagraph [], a "Custom Edition" means a work, when taken as a whole, contains less than Eighty (80%) Percent of the content of the Work.

12. With respect to "Electronic Derivatives of the Work," the October 28, 2009 Amendment provides that Professors McMurry and Fay will receive:

> 21% of the net cash received by [Pearson] or [its] affiliate for the sale of copies of derivative versions of the Work delivered in non-print media, including, without limitation, via audio (sound recordings), video, motion picture or multimedia versions, and any other forms of electronic media.

13. With respect to "Electronic Reproductions of the Work," the October 28, 2009 Amendment provides that Professors McMurry and Fay will receive:

>21% of the net cash received by [Pearson] or [its] affiliate for the sale of copies of, or subscriptions for access to, reproductions of the Work, in whole or in part, in any non-print format or media, now known or developed in the future, including, without limitation, reproductions that are viewable on-line, downloadable from a web-site, transmitted via cable, or satellite, or delivered on CD-ROM or in other electronic media (including but not limited to magnetic and optical media, laser disks, compact disks, and computer programs).

14. On April 20, 2011, Pearson and Professors McMurry and Fay entered into a further amendment to the *General Chemistry* Publishing Agreement (the "April 20, 2011 Amendment"), which, *inter alia*, deleted and replaced the subparagraph regarding royalties to be paid for sales of "Electronic Reproductions of the Work" to specifically include, without limitation, "reproductions through CourseSmart."

15. On November 19, 2012, Professor Robinson entered into a Contributor Agreement with Pearson for work to be included in the seventh and subsequent editions of *General Chemistry* (the "*General Chemistry* Contributor Agreement"). That agreement sets forth the schedule of royalties to be paid by Pearson to Professor Robinson, calculated based upon the quantity and type of sales of that work.

16. With respect to "Custom Editions," the *General Chemistry* Contributor Agreement provides that Professor Robinson will receive:

>2% of net cash received by [Pearson] or its affiliate for the sale of copies of custom editions of the seventh edition of the Work created primarily for a particular institution.

17. With respect to "Electronic Derivatives of the Seventh Edition of the Work," the *General Chemistry* Contributor Agreement provides that Professor Robinson will receive:

>4.2% of the net cash received by [Pearson] or its affiliate for the sale of copies of derivative versions of the seventh edition of the Work delivered in non-print media, including, without limitation, via audio (sound recordings), video, motion picture or multimedia versions, and any other forms of electronic media.

18.     With respect to "Electronic Reproductions of the Seventh Edition of the Work," the *General Chemistry* Contributor Agreement provides that Professor Robinson will receive:

> 4.2% of the net cash received by [Pearson] or its affiliate for the sale of copies of, or subscriptions for access to, reproductions of the seventh edition of the Work, in whole or in part, in any non-print format or media, now known or developed in the future, including, without limitation, reproductions that are viewable on-line, downloadable from a web-site, transmitted via cable, or satellite, or delivered on CD-ROM or in other electronic media (including but not limited to magnetic and optical media, laser disks, compact disks, and computer programs).

19.     On October 25, 2013, Pearson and Professors McMurry and Fay entered into a further amendment to the *General Chemistry* Publishing Agreement (the "October 25, 2013 Amendment"), which provided that Professor Robinson would bear the obligation to prepare the manuscript and supporting materials for seventh and subsequent editions of that work.

20.     The October 25, 2013 Amendment provides Pearson with the right to deduct the cost of payment to Professor Robinson, inclusive of fees and royalties, from royalties due to Professors McMurry and Fay, provided that such deduction shall not exceed certain specific percentages of the total royalties due to Professors McMurry and Fay.

21.     Subsequently, the parties entered into an agreement for the Eighth Edition of the work pursuant to which the 4.2% paid Professor Robinson would increase to 8.4% with a concomitant decrease in the amounts due Professors McMurry and Fay.

B.      *Chemistry: An Atoms First Approach*

22.     On August 25, 2008, Professors McMurry and Fay entered into a publishing agreement with Pearson for the work *Chemistry: An Atoms First Approach* (the "*Atoms First* Publishing Agreement"), also sold under the name *General Chemistry: Atoms First*, which was to contain substantial portions of *General Chemistry*. That agreement sets forth the schedule of royalties to be paid by Pearson to Professors McMurry and Fay, calculated based upon the quantity and type of sales of that work.

5

23. With respect to "Custom Editions," the *Atoms First* Publishing Agreement provides that Professors McMurry and Fay will receive:

> 10% of the net cash received by [Pearson] or [its] affiliate for the sale of copies of custom editions of the Work created primarily for a particular institution. For purposes of this subparagraph [], a "Custom Edition" means a work, when taken as a whole, contains less than Eighty (80%) Percent of the content of the Work.

24. With respect to "Electronic Derivatives of the Work," the *Atoms First* Publishing Agreement provides that Professors McMurry and Fay will receive:

> 10% of the net cash received by [Pearson] or [its] affiliate for the sale of copies of derivative versions of the Work delivered in non-print media, including, without limitation, via audio (sound recordings), video, motion picture or multimedia versions, and any other forms of electronic media.

25. With respect to "Electronic Reproductions of the Work," the *Atoms First* Publishing Agreement provides that Professors McMurry and Fay will receive:

> 21% of the net cash received by [Pearson] or [its] affiliate for the sale of copies of, or subscriptions for access to, reproductions of the Work, in whole or in part, in any non-print format or media, now known or developed in the future, including, without limitation, reproductions that are viewable on-line, downloadable from a web-site, transmitted via cable, or satellite, or delivered on CD-ROM or in other electronic media (including but not limited to magnetic and optical media, laser disks, compact disks, and computer programs).

26. On May 25, 2011, Pearson and Professors McMurry and Fay entered into an amendment to the *Atoms First* Publishing Agreement (the "May 25, 2011 Amendment"), which deleted and replaced, *inter alia*, the subparagraph regarding royalties to be paid for sales of "Electronic Reproductions of the Work" to specifically include, without limitation, "reproductions through CourseSmart."

    C. *Principles of General, Organic and Biochemistry*

27. On January 15, 1987, Professor McMurry entered into a publishing agreement with Pearson (through its predecessor-in-interest Prentice-Hall) for the work *Principles of General, Organic and Biochemistry* (the "*Principles* Publishing Agreement"), also sold under

the name *Fundamentals of General, Organic and Biochemistry*. That agreement sets forth the schedule of royalties to be paid by Pearson to Professor McMurry, calculated based upon the quantity and type of sales of that work.

28. The *Principles* Publishing Agreement provides:

> The Publisher may permit others to publish, broadcast by radio, make recordings, mechanical or electromagnetic renditions, publish book club and microfilm editions, make translations and other versions, show by motion pictures or by television, syndicate, quote, and otherwise utilize this work, and material based on this work. The net amount of any royalty compensation received from such use shall be divided equally between the Publisher and Author. The Publisher may authorize such use by others without compensation, if, in the Publisher's judgment, such use may benefit the sale of the work. If the Publisher itself uses the work for any of the foregoing purposes, the Publisher will pay the Author a royalty of 5% of the cash received from such use.

II. **Pearson's Breaches of the Agreements**

29. Since on or before January 1, 2014, Pearson has sold an online product titled *Mastering Chemistry* which is in effect a student workbook that accompanies chemistry texts, including *General Chemistry, Chemistry: An Atoms First Approach* and *Principles of General, Organic and Biochemistry* (collectively, the "Authors' Works"). In fact, in the vast majority of instances, *Mastering Chemistry* is sold with every textbook and *e-text* version of the Authors' Works, and also separately as a standalone for students who, for example, purchase used versions of the Authors' Works.

30. Although only Pearson has the actual numbers, it is believed to have sold at least as many *Mastering Chemistry* subscriptions or packages as it has the Authors' Works. While Pearson occasionally pays royalties to the authors for such sales, in the vast majority of such sales it pays no royalties whatsoever to the authors.

31. Such failure to compensate Professors McMurry, Fay and Robinson for *Mastering Chemistry* is a breach of their respective publishing agreements. *Mastering Chemistry* is in

simplest form merely an electronic version of the end of chapter problems in the Authors' Works, with problems, figures and formulas copied verbatim from the Authors' Works. Moreover, Pearson prominently displays the authors on the cover of at least some versions *Mastering Chemistry*.

32. The failure to pay royalties on such publications is a breach of the royalty provisions found in Paragraph I(3) and/or (4) of the amended General Chemistry Publishing Agreement, breach of the royalty provision found in Exhibit B, Paragraph C(ii)(c) and/or (d) of the General Chemistry Contributor Agreement, breach of the royalty provisions found in Paragraph H(3) and/or (4) of the amended Atoms First Publishing Agreement and breach of the royalty provision found in Paragraph I of the amended Principles Publishing Agreement.

33. Further, during this same period of time, beginning no later than January 1, 2014 and continuing to the present, Pearson has sold custom editions of *General Chemistry* and *Atoms First* without compensating Professors McMurry, Fay and Robinsons for those sales, in breach of the royalty provisions found in Paragraph I(2) of the amended *General Chemistry* Publishing Agreement and the royalty provision found in Exhibit B, Paragraph C(ii)(b) of the *General Chemistry* Contributor Agreement for *General Chemistry*, and Paragraph H(2) of the amended Publishing Agreement for *Atoms First*.

34. Specifically, Pearson has sold multiple copies of editions that contain only portions of the texts as specified by particular professors or institutions, yet paid no royalties to the Plaintiffs despite their obligations to do so as set forth above. Once again, only Pearson has the data that demonstrates the breadth and extent of such sales.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract**
*By Plaintiffs McMurry and Fay*

35. Plaintiffs repeat and reallege the allegations contained in all of the proceeding paragraphs as if fully set forth herein.

36. The *General Chemistry* Publishing Agreement, October 28, 2009 Amendment, April 20, 2011 Amendment, and October 25, 2013 Amendment were at the relevant times valid and binding contracts between Pearson and Professors McMurry and Fay.

37. The *Atoms First* Publishing Agreement and May 25, 2011 Amendment (collectively with the *General Chemistry* Publishing Agreement and amendments thereto, the "McMurry/Fay Agreements") were at the relevant times valid and binding contracts between Pearson and Professors McMurry and Fay.

38. Professors McMurry and Fay have fully performed their own obligations to Pearson under the McMurry/Fay Agreements and/or their performance has been excused.

39. Pearson has materially breached the McMurry/Fay Agreements by failing to pay royalties due to Professors McMurry and Fay based upon Pearson's sales of the subject works.

40. These breaches have caused damage to Professors McMurry and Fay in an amount to be proven at trial, but in excess of $75,000, exclusive of interest and costs.

41. Pearson's continuing misuse of Professors McMurry's and Professor Fay's works constitutes an ongoing breach and/or potential future breaches of the McMurry/Fay Agreements.

**SECOND CLAIM FOR RELIEF**
**Breach of Contract**
*By Plaintiff Robinson*

42. Plaintiffs repeat and reallege the allegations contained in all of the proceeding paragraphs as if fully set forth herein.

9

43. The *General Chemistry* Contributor Agreement and October 25, 2013 Amendment (collectively the "Robinson Agreements") were at the relevant times valid and binding contracts between Pearson and Professor Robinson.

44. Professor Robinson has fully performed her own obligations to Pearson under the Robinson Agreements and/or her performance has been excused.

45. Pearson has materially breached the Robinson Agreements by failing to pay royalties due to Professor Robinson based upon Pearson's sales of the subject work.

46. These breaches have caused damage to Professor Robinson in an amount to be proven at trial, but in excess of $75,000, exclusive of interest and costs.

47. Pearson's continuing misuse of Professor Robinson's work constitutes an ongoing breach and/or potential future breaches of the Robinson Agreements.

### THIRD CLAIM FOR RELIEF
### Breach of Contract
*By Plaintiff McMurry*

48. Plaintiffs repeat and reallege the allegations contained in all of the proceeding paragraphs as if fully set forth herein.

49. The *Principles* Publishing Agreement was at the relevant times a valid and binding contract between Pearson and Professor McMurry.

50. Professor McMurry has fully performed his own obligations to Pearson under the *Principles* Publishing Agreement and/or his performance has been excused.

51. Pearson has materially breached the *Principles* Publishing Agreement by failing to pay royalties due to Professor McMurry based upon Pearson's sales of the subject work.

52. These breaches have caused damage to Professor McMurry, in an amount to be proven at trial.

53. Pearson's continuing misuse of Professor McMurry's work constitutes an ongoing breach and/or potential future breaches of the *Principles* Publishing Agreement.

**WHEREFORE**, Plaintiffs seek judgment against Defendant as follows:

a. An award of compensatory damages in an amount to be proven at trial, together with pre-judgment interest;

b. Costs of this action and attorneys' fees as allowed by law; and

c. Such other and further relief as may be just.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Dated: New York, New York  
November 29, 2021

AMINI LLC

By: /s Bijan Amini
Bijan Amini
Avery Samet
131 West 35th Street, 12th Floor
New York, New York 10001
bamini@aminillc.com
asamet@aminillc.com
*Attorneys for Plaintiffs*

11